## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| R. BRADLEY MAULE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 08-3357 |
| | : | |
| PHILADELPHIA MEDIA | : | |
| HOLDINGS, LLC; GYRO | : | |
| ADVERTISING, INC.; and | : | |
| STEVEN GRASSE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---------------------------------------------------------------

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                   **DECEMBER 17, 2008**

Presently before the Court is the Motion of Defendant Philadelphia Media Holdings, LLC

("PMH") to Dismiss the Amended Complaint of Plaintiff R. Bradley Maule ("Maule").  For the

reasons set forth below, the Motion to Dismiss is granted in part, and denied in part.

**I.      FACTS**

PMH is the publisher of The Philadelphia Inquirer and the Philadelphia Daily News

(Daily News), two major newspapers circulating in the Philadelphia area.  Maule is a

photographer who maintains a website titled "phillyskyline.com."  Maule focuses his

photography on the Philadelphia area, including Philadelphia's skyline, "[its] neighborhoods, its

people, culture, architecture, and its urban development."  (Amend. Compl. ¶ 9.)  The facts set

forth in Maule's Complaint allege that, in May 2005, Maule photographed the Philadelphia

skyline from the eighteenth floor of the Penn Tower, a hotel located in West Philadelphia.  Maule

alleges that he then altered the photograph in two ways.  First, he inserted artistic conceptual

renderings of the Comcast Center and Mandeville Place, buildings that had not yet been

completed and which were still under construction in May 2005.  Second, in order that the

photograph would contain a watermark,  he modified a billboard in the picture to read: "Visit

Philly Skyline Dot Com."  (Amend. Compl. ¶ 12(b)).  Thereafter, Maule posted the photograph,

complete with the alterations to the billboard, the Comcast Center, and Mandeville Place, on his

website as a visual representation of how the Philadelphia skyline would appear in 2008

("Projected Skyline Photograph").

He further alleges that, sometime in November 2007, PMH began an advertising

campaign titled "The Return of the Flying Pigs."  As part of this campaign, Maule alleges that

PMH distributed a series of glossy inserts in its newspapers, depicting a pig flying across the

Philadelphia skyline ("pig glossy").  Maule asserts that PMH cropped the picture of the

Philadelphia skyline in the pig glossy from the Projected Skyline Photograph on his website,

removed the "Visit Philly Skyline Dot Com" text from the billboard in the picture, and then

printed the picture in its advertisements.  Maule subsequently registered the Projected Skyline

Photograph with the United States Copyright Office on May 13, 2008.

Maule's next contention involves a second photograph that he posted on his website on

March 13, 2008 to accompany an article he had written concerning the pending construction of

the American Commerce Center.  The post was titled "13 March 08:1,500 feet of Breaking

News" and contained several paragraphs of text, along with four photographs.  At the end of the

article, the following text appeared: "Notes: All images courtesy of Walnut Street Capital and

Kohn Pederson Fox Associates."  Soon after posting this version of the article, Maule asserts that

he decided to update the article by adding one of his own photographs.  This photograph had

been taken from the west side of City Hall and had never before been published.  It is a depiction

of the Philadelphia skyline, but with the addition of a sketch that Maule had added outlining

where the American Commerce Center would be located and what it would look like upon

completion ("American Commerce Photograph").  It also contained a watermark, which

appeared along the bottom and stretched the length of the photograph, and read: "Philly

Skyline.Com," and was accompanied by the following commentary, which appeared above the

photograph on Maule's webpage: "UPDATE: Ah what the hell, howzabout a rudimentary Philly

Skyline composite?"

On March 17, 2008, four days after Maule posted the American Commerce Photograph

on his website, Maule alleges that PMH printed the same photograph on the front page of that

day's edition of the Daily News, with the "Philly Skyline.Com" watermark removed from the

photograph.

On September 2, 2008 Maule filed an Amended Complaint in this Court against PMH,

Gyro Advertising, and Steven Grasse.  On October 6, 2008, PMH filed a Motion to Dismiss

Counts IV through X of Maule's Complaint.  Count IV sets forth a claim for appropriation

pursuant to the Restatement (Second) of Torts § 652C for use of the Projected Skyline

Photograph in the pig glossy.  Count V asserts a claim for copyright infringement pursuant to 17

U.S.C. §§ 503-505 for use of the Projected Skyline Photograph in the pig glossy.  Count VI is a

request for injunctive relief pursuant to 17 U.S.C. §§ 502.  Count VII is a request for declaratory

relief pursuant to 28 U.S.C. § 2201, requesting that this Court invalidate PMH's copyright on the

March 17, 2008 edition of the Daily News.  Count VIII sets forth a claim for appropriation under

the Restatement (Second) of Torts § 652C, relating to the use of the American Commerce

Photograph in the March 17, 2008 edition of the Daily News.  Count IX asserts a claim under the

Lanham Act, 15 U.S.C. § 1125 for the use of both photographs.  Finally, Count X asserts claims

under the Pennsylvania Anti-Dilution Act, 54 Pa. C.S.A. §§ 1124 and 1125.

## II.     STANDARD OF REVIEW

A motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal

sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  A court must

determine whether the party making the claim would be entitled to relief under any set of facts

that could be established in support of his or her claim.  Hishon v. King & Spalding, 467 U.S. 69,

73 (1984) (citing Conley, 355 U.S. at 45-46); see also Wisniewski v. Johns-Manville Corp., 759

F.2d 271, 273 (3d Cir. 1985).

In considering a motion to dismiss, all allegations in the complaint must be accepted as

true and viewed in the light most favorable to the non-moving party.  Rocks v. City of Phila., 868

F.2d 644, 645 (3d Cir. 1989) (citations omitted).  Exhibits which are attached to the complaint

and upon which one or more claims are based can be considered in deciding a motion to dismiss

pursuant to Rule 12(b)(6).  See Rossman v. Fleet Bank (R.I.) Nat'l Assoc., 280 F.3d 384, 388 n.4

(3d Cir. 2002).  A court need not credit either "bald assertions" or "legal conclusions" in a

complaint when deciding a motion to dismiss.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir.

2005) (citations omitted).

## III.    DISCUSSION

Initially, we note that PMH has moved to strike, and Maule has agreed to withdraw,

Maule's claims for specific dollar amounts, pursuant to Local Civil Rule 5.1.1.  As such, Maule's

claims for specific dollar amounts are stricken, and in their stead, this Court construes the

Complaint as asserting claims in unspecified amounts in excess of the arbitration limits of Local

Civil Rule 53.2.

### A.      Copyright Infringement

Maule asserts claims against PMH for copyright infringement related to PMH's use of the

American Commerce Photograph in the March 17, 2008 edition of the Daily News.[1]  The

exclusive rights of copyright holders are codified in statute at § 106 of the Copyright Act.  Under

§ 106, the copyright owner has the exclusive right both to publicly display his work and to make

copies of it.[2]  The Copyright Act protects all expressions upon fixation in a "tangible medium."

17 U.S.C. § 102(a).  The originator of a work is therefore protected under the Act as soon as the

work is recorded in some concrete, tangible way.  See id.

---

[1] Though Maule also asserts a claim for copyright infringement related to PMH's use of the Projected
Skyline Photograph in the pig glossy, we address only the copyright infringement claim related to the American
Commerce Photograph, as PMH's Motion only requests dismissal of the copyright infringement claims related to the
"Second Infringement," or the publication of March 17, 2008.

[2] § 106. Exclusive rights in copyrighted works
Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do
and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of
ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures
and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic,
or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the
copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio
transmission.

A person commits copyright infringement by violating one or more of the exclusive rights of the copyright owner as enumerated in § 106.  17 U.S.C. § 501.  Infringement occurs when a person reproduces, adapts, distributes, publicly performs or publicly displays a work protected by the Copyright Act in an unprivileged way.  See id.; § 106.  A copyright holder must show two things to establish a case of infringement: (1) he must demonstrate ownership of a valid copyright, and (2) he must show that the defendant has copied, displayed, or distributed protected elements of the copyrighted work.  William A. Graham Co. v. Haughey, 430 F. Supp. 2d 458, 465 (E.D. Pa. 2006); see Whelan Assoc., Inc., v. Jaslow Dental Lab., Inc., 797 F.2d 1222, 1231 (3d Cir. 1986).  The remedies for copyright infringement are set forth in Chapter 5 of the Act.  Maule asserts claims for relief under § 502,[3] § 503,[4] § 504,[5]

---

[3] § 502.  Remedies for Infringement: Injunctions

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

[4] § 503. Remedies for Infringement: Impounding and disposition of infringing articles

(A)(1) At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable--
        (A) of all copies or phonorecords claimed to have been made or used in violation of the exclusive right of the copyright owner;
        (B) of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies of phonorecords may be reproduced; and
        (C) of records documenting the manufacture, sale, or receipt of things involved in any such violation, provided that any records seized under this subparagraph shall be taken into the custody of the court.

[5] § 504. Remedies for Infringement: Damages and profits

(a) In general. Except as otherwise provided by this title, an infringer of copyright is liable for either--
        (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

6

and § 505[6] of the Act.

In response to Maule's claims of copyright infringement, PMH contests Maule's

ownership of a copyright in the American Commerce Photograph.  Specifically, PMH asserts

that the caption above the photograph reading: "Notes: All images courtesy of Walnut Street

Capital and Kohn Pederson Fox Associates," illustrates that Maule is not the owner of the

American Commerce Photograph.  Maule argues that the "Walnut Street Capital" caption does

not apply to the American Commerce Photograph, and that this fact was clear from the caption

placed immediately above the American Commerce Photograph, identifying it as a

"rudimentary Philly Skyline composite."

For purposes of the Motion to Dismiss, Maule alleges that he owns a copyright in the

American Commerce Photograph, and that PMH copied it without his authorization.  If Maule

can prove the truth of these allegations, he has a viable claim of copyright infringement against

PMH.  Thus, the allegations set forth in the Complaint are sufficient to survive the Motion to

Dismiss.

## B.     Appropriation

In Counts IV and VIII, Maule asserts claims for appropriation based on PMH's use of

the Projected Skyline Photograph in the pig glossy (Count IV) and of the American Commerce

---

(2) statutory damages, as provided by subsection (c).

[6] § 505. Remedies for Infringement: Costs and attorney's fees

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or
against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the
court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Photograph on the front page of the March 17, 2008 edition of the <u>Daily News</u> (Count VIII).

Pennsylvania courts have adopted the position of the Restatement (Second) of Torts, which

defines "appropriation" in the following manner: "One who appropriates to his own use or

benefit the name or likeness of another is subject to liability to the other for invasion of his

privacy."  Restatement (Second) of Torts § 652C.  Appropriation is grounded in the property

right of an individual in the exclusive use of his own identity.  <u>See</u> <u>id.</u>, cmt a.  The "use or

benefit" at issue in an appropriation claim is typically a commercial use of one's name or

likeness.  <u>See</u> <u>id.</u> cmt. b.

The facts set forth in Maule's Complaint fail to establish that PMH appropriated

Maule's image or likeness for its own benefit.  In order to make out a claim of appropriation,

Maule must allege that PMH used his name or his "actual physical likeness" without his

permission.  <u>Whole Enchilada, Inc., v. Travelers Prop. Cas. Co. of Am.</u>, No. 07-1533, 2008

U.S. Dist. LEXIS 77186, at *51 (W.D. Pa. Sept. 29, 2008) (finding "[t]he plain meaning of

'likeness' is 'appearance or semblance'"); <u>see also</u> <u>Fanelle v. LoJack Corp.</u>, 79 F. Supp. 2d

558, 564 (E.D. Pa. 2000) (finding plaintiff established claim for appropriation where defendant

used plaintiff's name and photograph to advertise product).  However, the bases of Maule's

appropriation claims are that PMH used the Projected Skyline and American Commerce

Photographs without his permission.  He makes no assertion that PMH used either his name, or

a picture of his physical person in its publications.  Rather, his claim is based on PMH's use of

his photographs depicting the Philadelphia skyline.  While Maule asserts that his photographs

constitute his "likeness" for purposes of these claims, photographs of the Philadelphia skyline

do not sufficiently identify Maule, as an individual, such that it can be said that using these

8

photographs is an appropriation of Maule's name or likeness.  See Whole Enchilada, Inc., 2008

U.S. Dist. LEXIS 77186, at *50-51 (rejecting argument that plaintiff's financial identity

constituted plaintiff's likeness).  The public at large does not associate an image of the

Philadelphia skyline with Maule; therefore, PMH's use of the photographs, without more, does

not sufficiently identify Maule for purposes of a claim of appropriation.  See McFarland v.

Miller, 14 F.3d 912, 919-22 (3d. Cir. 1994) (discussing, in the context of right to publicity,

need for a link between the appropriatedg name or image with that of the plaintiff); White v.

Samsung Elec. Am., Inc., 971 F.2d 1395, 1397-99 (9th Cir. 1992) (same).

> **C.      Lanham Act**

Maule also asserts a claim for "reverse passing off" under the Lanham Trade-Mark Act,

§ 43(a), 15 U.S.C. § 1125 (Count IX).  Under § 43(a) of the Lanham Act:

> **(1)** Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any word,
> term, name, symbol, or device, or any combination thereof, or
> any false designation of origin, false or misleading description of
> fact, or false or misleading representation of fact, which–
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to
> the affiliation, connection, or association of such person with another
> person, or as to the origin, sponsorship, or approval of his or her goods,
> services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another
> person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a).  "Passing off" occurs when a producer misrepresents his own goods as

someone else's.  See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28 n.1

(2003). "Reverse passing off" occurs when the producer misrepresents someone else's goods as his own. Monsanto Co. v. Syngenta Seeds, Inc., 443 F. Supp. 2d. 648, 651 (D. Del. 2006). Maule asserts that PMH engaged in "reverse passing off" when it printed the Projected Skyline and American Commerce Photographs because, by printing the photographs in the newspaper without identifying Maule as their creator, PMH was essentially "passing off" Maule's photographs as its own. Specifically, Maule states that "Defendants' uses of Plaintiff's photos . . . are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendants, or as to the origin, sponsorship, or approval of Defendant's goods . . . by Plaintiff." (Amend. Compl. ¶ 114.)

Nonetheless, a review of the case-law in this area reveals that the same argument advanced by Maule was specifically rejected by the United States Supreme Court in Dastar, 539 U.S. 23. In Dastar, Twentieth Century Fox arranged for Time, Inc. to create a television show based on a book that had been published in 1948, detailing General Dwight Eisenhower's account of several specific happenings that took place during World War II. Id. at 25-26. This television show was titled, Crusade in Europe. Id. Sometime later, SFM Entertainment and New Line Home Video, Inc. acquired the rights to distribute this television series on videotape. Id. New Line distributed the videotapes, which were merely a repackaged restoration of the original television series. Id. at 26. In 1995, Dastar released a video titled, World War II Campaigns in Europe. Id. To make its video, Dastar purchased eight tapes of the original television series of Crusade, copied them, made some minor changes, including removing "references to and images of the book," and sold the video as its own. Id. at 26-27. In 1998, Fox, SFM, and New Line initiated suit arguing, inter alia, that Dastar had engaged in reverse

passing off by passing their video off as its own, thus creating a "false designation of origin" in violation of § 43 of the Lanham Act. Id. at 27.

In ruling on the plaintiffs' Lanham Act claim, the Supreme Court found that the phrase "origin of goods" in the statute refers only to the manufacturer of the physical goods that are being sold to the public and does not afford protection to the originator of the underlying ideas or expressions which those goods may contain. Id. at 31-32. The Court went on to explain that the problem with interpreting the Lanham Act as covering the underlying concepts or expressions embodied in goods is that such an interpretation would conflict with copyright law, creating a "species of mutant copyright law that limits the pubic's federal right to copy and use expired copyrights." Id. at 34 (internal citations omitted). As such, the Court found that the "origin of goods" phrase in the Lanham Act was not intended to protect the originality of expressions encompassed within goods. Id. at 37. Rather, it was designed to protect those goods that are actually available for sale to the public. Accordingly, the Court found that because Dastar was the "origin" of the videotape that it offered for sale, it had not violated the Lanham Act, despite the fact that the plaintiffs may have been the "origin" of several concepts contained within the videotape. Id. at 38.

Given the reasoning of the Supreme Court in Dastar, we must dismiss Maule's claim under the Lanham Act. Maule's Lanham Act claim alleges that PMH has violated the Act by copying his photographs and including them in the pig glossy and in the Daily News without his permission. While PMH may not have been the originator of the photographs contained in its newspaper, it was the originator of the newspaper itself, the actual good being offered for sale to the public. As the stated above, the protections of the Lanham Act do not reach to the

underlying expressions embodied in goods.  Id. at 37; Schiffer Pub., Ltd. v. Chronicle Books,

LLC, 350 F. Supp. 2d 613, (E.D. Pa. 2004).  Maule's Lanham Act claim, therefore, fails.

        **D.**        **Pennsylvania Anti-Dilution Law**

Finally, Maule advances claims under the Pennsylvania Anti-Dilution statutes, 54 Pa.

C.S.A. §§ 1124 and 1125.  Section 1124 provides a remedy for injunctive and other equitable

relief to the owner of a mark "famous in this Commonwealth" when an infringer's use of the

mark is likely to cause dilution to the value of the mark.  54 Pa. C.S.A. § 1124.  Section 1125

allows "any owner of a mark registered under this chapter" to enjoin the "manufacture, use,

display, or sale of any counterfeits or imitations thereof;" to collect profits from the sale of

imitations; or to obtain a court Order ordering the destruction of the remaining imitations.  54

Pa. C.S.A. § 1125.  Pennsylvania law defines a "trademark" or "service mark" in the following

manner:

> **"Mark."**  Includes any trademark or service mark entitled to
> registration under this chapter whether registered or not.
>
> **"Service mark."**  A mark used in the sale or advertising of services to
> identify the services of one person and distinguish them from the
> services of others and includes, without limitation, the marks, names,
> symbols, titles, designations, slogans, character names and distinctive
> features of radio or other advertising used in commerce.
>
> **"Trademark."**  Any word, name, symbol, or device, or any
> combination thereof, adopted or used by a person to identify goods
> produced, manufactured or sold by the person, and to distinguish them
> from goods produced, manufactured or sold by others.

54 Pa. C.S.A. § 1102.

Maule has failed to allege use of a "mark."  Initially, Maule argues in the Complaint

that he is the owner of a trademark in the phrase, "phillyskyline.com" and that PMH's actions

have diluted that mark.  (Amend. Compl. ¶¶ 119-21.)  However, as neither party has disputed

that PMH never made use of the "phillyskyline.com" phrase, he later asserts in his Answer to

the Motion to Dismiss, that each of his photographs constitutes his "mark" for purposes of this

claim. (Pl.'s Ans. 8.)  We disagree.  The very concept of a "trademark" is a symbol or

identifier that is placed upon a product to identify the maker or source of that product in the

eyes of consumers.  J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> §

7:28 (4th ed. 2008).  Neither the Projected Skyline Photograph, nor the American Commerce

Photograph, constitutes a trademark because neither serves to identify Maule as its producer.

Rather, the photographs are the goods, which themselves, could be marked.  They are not,

however, marks in themselves.

Even assuming that Maule could claim trademark rights in each of his photographs, his

dilution claim would still fail because he cannot establish that these "marks" are famous in the

Commonwealth.  To establish a claim for dilution under § 1124, a plaintiff must demonstrate:

(1) that its mark is famous; (2) that the defendant began using a mark in commerce after the

plaintiff's mark became famous; and (3) that the defendant's use is diluting the value of the

mark.  <u>See</u> 54 Pa. C.S.A. § 1124.  In determining whether the plaintiff is the owner of a famous

mark, the court may consider:

> (1) The degree of inherent or acquired distinctiveness of the mark
> in this Commonwealth.
> (2) The duration and extent of use of the mark in connection with
> the goods and services with which the mark is used.
(3) The duration and extent of advertising and publicity of the mark in this Commonwealth.
(4) The geographical extent of the trading area in which the mark is used.
(5) The channels of trade for the goods or services with which the mark is used.
> (6) The degree of recognition of the mark in the trading areas and

channels of trade in this Commonwealth used by the mark's owner and
the person against whom the injunction is sought.

(7) The nature and extent of use of the same or similar marks by third
parties.

(8) Whether the mark is the subject of a registration in this
Commonwealth or a Federal registration under the act of March 3, 1881
(21 Stat. 502) or the act of February 20, 1905 (33 Stat. 724), repealed by
the Trademark Act of 1946 (60 Stat. 427, 15 U.S.C. § 1051, et. seq.), or
on the principal register.

Id.  Maule has presented no evidence that the photographs, standing alone without the

"phillyskyline.com" watermark, have enjoyed any kind of fame or notoriety within the

Commonwealth.  The only evidence that he presented on this issue relates to the fame of

Maule, as an individual, in the Philadelphia community.  (Pl.'s Ans. 8-9.)  The fact that Maule,

himself, may be well-known in the Philadelphia area does not establish that either of the two

photographs in question are famous within the Commonwealth of Pennsylvania.  Therefore,

Maule's claims under 54 Pa. C.S.A. §§ 1124 and 1125 will be dismissed.

Finally, we note that although PMH's Motion seeks the dismissal of Counts IV

through X of Maule's Complaint, neither party has presented argument with respect to Count

VII, Maule's request for declaratory relief pursuant to 28 U.S.C. § 2201.  Because neither

party has addressed it, this claim will remain intact.  Consequently, the Motion is granted

with respect to Counts IV, VIII, IX, and X, and denied in all other respects.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                                                  :

R. BRADLEY MAULE,                       :
                                        :       CIVIL ACTION
                    Plaintiff,          :
                                        :
     v.                                 :       No. 08-3357
                                        :
PHILADELPHIA MEDIA                      :
HOLDINGS, LLC; GYRO                     :
ADVERTISING, INC.; and                  :
STEVEN GRASSE,                          :
                                        :
                    Defendants.         :
_____:

## ORDER

**AND NOW**, this  17th  day of December, 2008, upon consideration of the Motion to

Dismiss filed by Defendant Philadelphia Media Holdings, LLC (Doc. No. 6), and the

response thereto, it is hereby **ORDERED** that the Motion is **GRANTED IN PART** and

**DENIED IN PART**.  The Motion to Dismiss is granted with respect to Counts IV, VIII, IX,

and X.  The Motion to Dismiss is denied with respect to Counts V, VI, and VII.


                                   BY THE COURT:


                                   /s/ Robert F. Kelly
                                   ROBERT F. KELLY
                                   SENIOR JUDGE