

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R. BRADLEY MAULE, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 08-3357 |
| PHILADELPHIA MEDIA HOLDINGS, LLC, GYRO ADVERTISING, INC., and STEVEN GRASSE, | |
| Defendants. | |
| GYRO ADVERTISING, INC. and STEVEN GRASSE, | |
| Third-Party Plaintiffs, | |
| v. | |
| SHANNON ASSOCIATES | |
| Third-Party Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**  MARCH 15, 2010

Presently before the Court are the Cross-Motions for Summary Judgment filed by Third-Party Plaintiffs Gyro Advertising, Inc. ("Gyro") and Steven Grasse ("Grasse") (collectively the "Gyro Parties"), and Third-Party Defendant Shannon Associates. For the following reasons, the Gyro Parties' Motion is granted and Shannon Associates' Motion is denied.

**I.    BACKGROUND**

### A. Introduction

The claims in this case relate to a November 2007 Professional Services and License Agreement (the "Agreement") through which Shannon Associates provided an illustration ("Pigs Fly Illustration") to Philadelphia Media Holdings, LLC ("PMH"), a Gyro client, for an advertising campaign. On July 17, 2008, R. Bradley Maule ("Maule") filed a Complaint in this Court against the Gyro Parties and PMH on the basis that the Pigs Fly Illustration provided by Shannon Associates, and used in PMH's advertising campaign, infringed upon Maule's federally copyrighted photograph of the Philadelphia skyline. On September 2, 2008, Maule filed a ten count Amended Complaint against the same parties, alleging copyright infringement and related causes of action ("First-Party Litigation").[1] On July 13, 2009, the First-Party Litigation settled. The current dispute concerns whether Shannon Associates is contractually obligated pursuant to the Agreement to indemnify the Gyro Parties for the attorneys' fees, costs, and settlement money it expended during the First-Party Litigation.

### B. Negotiation, Formation, and Execution of the Agreement

Maule is a photographer in Philadelphia, Pennsylvania, who focuses his photography on pictures of the Philadelphia area, including the city's skyline, "[its] neighborhoods, its people, culture, architecture, and its urban development." (Amend. Compl. ¶ 9.) Gyro is an advertising agency located in Philadelphia. Grasse is the chief executive officer and sole shareholder of Gyro. Shannon Associates is a company that provides the services of artists, illustrators, writers, and photographers. Finally, PMH is the publisher of The Philadelphia Inquirer and the

---

[1] Notably, a portion of Maule's claims related to a separate photograph of a proposed skyscraper in Philadelphia. However, these claims were only against PMH and not the Gyro Parties.

2

Philadelphia Daily News, two major newspapers circulating in the Philadelphia area.

In October 2007, Gyro contacted Shannon Associates because Gyro needed an illustration of a pig flying in front of the Philadelphia skyline for a PMH advertising campaign. Shannon Associates suggested that George Angelini ("Angelini"), an artist it had a relationship with, might be appropriate for the project. Gyro agreed and the parties began the process of framing a professional services agreement for Angelini's work.

Joe Conti ("Conti"), an employee at Gyro who handled business negotiations, was the individual who was primarily involved in the formation and negotiation of the Agreement for Gyro. Conti's main contact at Shannon Associates during this process was Gail Thurm ("Thurm") – a sales representative for the company. Gyro drafted the Agreement and Conti emailed Thurm an initial draft on October 31, 2007. In response, Thurm requested via email that Conti remove a "work for hire" provision from the draft of the Agreement.

On November 1, 2007, at 7:39 p.m., Conti emailed Thurm a revised draft of the Agreement that did not include the "work for hire" provision. Upon receipt of the draft, Thurm immediately telephoned Conti and requested that Angelini's name appear on the signature line. Conti testified that the conversation was short and that he did not ask Thurm why she wanted Angelini's name on the signature line. (Third-Party Pls.' Summ. J. Mot., Ex. B at 43:9-43:19.) Thurm testified that she merely recalled telling Conti that "our illustrators are the signing party to the contract and to please put George's name in that space." (Id., Ex. C at 106:14-107:14.) Conti agreed to make the modification. At 7:55 pm, only sixteen minutes after he sent the previous draft, Conti emailed Thurm the final draft of the Agreement with Angelini's name on the signature line. Shannon Associates forwarded the Agreement to Angelini, who digitally signed

3

the Agreement and sent it back to Shannon Associates. Subsequently, Gyro made out a check to Shannon Associates in the amount of $5,000 and mailed it to the company. Shannon Associates cashed the check and paid a portion of the funds to Angelini.

## C. The Agreement

The introductory paragraph of the Agreement, which was not changed throughout the various drafts, defines the parties to the contract. Specifically, it states: "This PROFESSIONAL SERVICES AGREEMENT ('Agreement') is made and entered into as of this first day of November, 2007, *by and between Gyro Advertising, Inc.*, 114-120 South 13th Street, Philadelphia, PA 19107 (herein 'Gyro') (as agents for Philadelphia Newspapers, LLC), *and Shannon Associates, (herein the 'Contractor')*." (Id., Ex. A at 1 (emphasis added).) Paragraph 1(a) of the Agreement explains that "[t]he Contractor agrees to provide and perform for the benefit of Gyro those services set forth on Exhibit A hereto (the 'Services') and to deliver those deliverables set forth on Exhibit A hereto (the 'Deliverables')." (Id.)

Exhibit A to the Agreement specifically outlines the relevant "Services" and "Deliverables." Significantly, Exhibit A to the Agreement also explains who the parties to the Agreement are: "'Services' and 'Deliverables' referenced below for purposes of the Professional Services and License Agreement ('Agreement') *by and between Gyro Advertising, Inc. ('Gyro') and Shannon Associates (the 'Contractor')* shall mean and include . . . ." (Id. at Ex. A (emphasis added).)

Notably, for purposes of the Agreement, paragraph 1(a) states: "[T]he Contractor's employees and any independent contractors permitted hereunder shall be referred to as the Contractor's 'Representatives.' The Contractor shall cause the Representatives to perform the

4

Services in accordance with the highest standards of professional care and in compliance with all applicable laws, rules and regulations." (Id. at 1.) Further, in paragraph 5, the Agreement specifically states that "the Contractor agrees and acknowledges that it will have the sole responsibility for supervising its Representatives and for developing the specific methods of performing the Services." (Id.)

Pursuant to paragraph 8 of the Agreement, the "Contractor" represented, warranted, and covenanted, among other things, that:

> (b) It shall not conceive or develop or reduce to practice, cause to be conceived or developed or reduced to practice, or write or design or implement or deliver in connection with or related to the services performed by it under this Agreement, at any time, any Deliverables or other material, data, information, or services that (I) ***infringe any intellectual property rights of any person*** or any rights of publicity, personality, or privacy of any person . . . .
>
> (d) Neither the Deliverables, their title, nor any use or exploitation by Gyro of the Deliverables ***will infringe any patent, trademark, trade secret, privacy, publicity, or other intellectual property or proprietary right of any person or entity***.

(Id. at 3 (emphasis added).) Most importantly, the Agreement contains an indemnification clause in paragraph 9 which states:

> Contractor ***shall defend, indemnify, and hold harmless*** Gyro and its officers, directors, shareholders, employees, representatives, agents, successors, and assigns from and against any and all losses, obligations, risks, damages, injuries, costs, settlements, liabilities, and expenses (including reasonable attorneys' fees), ***and against any and all claims, actions, suits, and proceedings, arising out of or relating to*** (a) any breach of Contractor's representations or warranties in this Agreement; (b) any breach of this Agreement by Contractor; (c) any fraud, negligence, willful misconduct, or violation of law by Contractor; and (d) any damage to property or injuries to persons, or other acts or omissions caused or contributed to by the Contractor or any of its Representatives, or anyone acting under the Contractor's direction or control or on the Contractor's behalf, in the course of performance under this Agreement.

(Id. at 4.) In paragraph 11, the Agreement also made clear that "***the duties and obligations of the***

5

*Contractor and its Representatives set forth herein* with respect to Gyro's Confidential Information, representations *and indemnifications*, and the provisions hereof relating to such duties and obligations, *shall survive completion of the Services, delivery of the Deliverables* and the termination of this Agreement." (Id. (emphasis added).)

### D. First-Party Litigation and Requests for Indemnification

As previously noted, the First-Party Litigation commenced in July 2008. In September 2008, the Gyro Parties contacted Shannon Associates and demanded that it fulfill its indemnification responsibilities pursuant to the Agreement. Subsequently, on November 6, 2008, the Gyro Parties sent a letter to Shannon Associates "requesting that Shannon Associates abide by its contractual indemnification obligations enumerated in paragraph 9 of the Agreement." (Id., Ex. I.) In this letter, the Gyro Parties requested that Shannon Associates advise by November 14, 2008 as to its position regarding its indemnification obligation to the Gyro Parties. (Id.)

Shannon Associates did not respond to the November 6, 2008 letter until January 21, 2009. In a January 21, 2009 letter to Gyro, Shannon Associates stated: "[B]ecause there has been no 'breach', Shannon Associates has no obligations to [the Gyro Parties] at this time based on paragraphs 8 and 9 of the Agreement. Nonetheless, from this point going forward, Shannon Associates will agree to defend and indemnify [the Gyro Parties] relevant to the above-referenced matter." (Id., Ex. J.)

In a January 30, 2009 letter, in response, the Gyro Parties provided a detailed explanation of their position that pursuant to the language in the Agreement "Shannon Associates is contractually required to defend, indemnify, and hold the Gyro Defendants harmless from the

allegations of infringement asserted against them in the [First-Party Litigation]" of which Shannon Associates were made aware in September 2008. (Id., Ex. K.) In this letter, the Gyro Parties demanded that Shannon Associates pay all of the Gyro Parties' attorneys' fees and costs from the commencement of the First-Party Litigation. Also, on January 30, 2009, the Court partially granted the Gyro Parties' Motion to Dismiss. Thus, Counts IV, IX, and X of the Amended Complaint were dismissed.

Subsequently, through a February 3, 2009 letter, Shannon Associates reasserted its position when it stated: "Shannon Associates does not have an obligation to defend, indemnify or hold harmless the 'Gyro defendants' until there is a finding Shannon breached its representation and warranty [that] its Deliverables would not infringe any intellectual property rights." (Id., Ex. L.) The company restated its position that it would agree to defend and indemnify the Gyro Parties from that point forward.

The Gyro Parties rejected Shannon Associates' offer to simply defend the First-Party Litigation in the future because they believed the case was close to a settlement. On February 13, 2009, the Gyro Parties informed Shannon Associates it would file a third-party complaint against the company if it did not abide by its alleged contractual obligations to pay all fees and costs associated with the First-Party Litigation by February 20, 2009. Shannon Associates did not respond by February 20, 2009. On February 23, 2009, the Gyro Parties filed their Third-Party Complaint in this Court against Shannon Associates.

Thereafter, in a March 5, 2009 letter, the Gyro Parties requested that Shannon Associates participate in settlement negotiations involving the First-Party Litigation, and also explained why transferring the defense of the First-Party Litigation to Shannon Associates' counsel would be

counter-productive and costly because of the likelihood of imminent settlement. The Gyro Parties informed Shannon Associates that they would revisit the transfer issue if the First-Party Litigation failed to settle.

On April 6, 2009, Shannon Associates filed an Amended Answer to the Third-Party Complaint and a Counterclaim for Declaratory Judgment that the Agreement did entitle the Gyro Parties to indemnify, defend, or hold harmless protection until there was a finding of a breach of the relevant representations in the Agreement. Significantly, in Shannon Associates' Answer, it denied for the first time that it was a party to the Agreement, and alleged that the Agreement was between Gyro and Angelini. On April 24, 2009, the Gyro Parties responded to Shannon Associates' Counterclaim. On July 13, 2009, the First-Party Litigation settled. In accordance with the settlement agreement, the Gyro Parties paid $15,000 to Maule and Shannon Associates paid $10,000 to Maule.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a

8

dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

In a case like this, where cross-motions for summary judgment have been filed, the Court must consider each motion individually. Reinert v. Giorgio Foods, Inc., 15 F. Supp. 2d 589, 593 (E.D. Pa. 1998). Each side bears the burden of establishing a lack of genuine issues of material fact, and showing that it is entitled to judgment as a matter of law. Id. at 593-94.

## III. DISCUSSION

The Gyro Parties' Third-Party Complaint sets forth one claim for breach of contract (Count I) based on Shannon Associates' alleged failure to fulfill its indemnification obligations pursuant to the Agreement. Shannon Associates' Counterclaim seeks a Declaratory Judgment

that the Agreement does not entitle the Gyro Parties to indemnify, defend, or hold harmless protection until there is a finding of breach of the representations contained in paragraph 8 of the Agreement. In the instant Motions, the parties seek summary judgment in their favor regarding their respective claims. The Court agrees with the parties that there are no genuine issues of material fact and that this litigation can be resolved at the summary judgment stage.

The determinative legal issues that the parties disagree on in this case are: a) whether Shannon Associates is a contracting party under the Agreement and b) whether Shannon Associates is contractually obligated to defend, indemnify, and hold harmless the Gyro Parties under the relevant indemnification provision in the Agreement. As discussed below, the Court finds that Shannon Associates is a contracting party and that it has indemnification obligations pursuant to the Agreement. As a result, the Court finds that the Gyro Parties are entitled to judgment as a matter of law.

### A. General Contract Interpretation Principles

Pennsylvania contract law applies in this case pursuant to the choice of law language in paragraph 12 of the Agreement. (Third-Party Pls.' Summ. J. Mot., Ex. A at 4) ("The terms and conditions of this Agreement and all aspects of the Contractor's relationship with Gyro shall be construed and enforced according to the laws of the Commonwealth of Pennsylvania, without regard to Pennsylvania conflicts of laws principles."). "[I]ndemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract." Consolidated Rail Corp v. Del. River Port Auth., 880 A.2d 628, 632 (Pa. Super. Ct. 2005). In determining the scope of an indemnification provision, courts must consider the four corners of the document and its surrounding circumstances. Widmer Eng'g, Inc. v. Dufalla, 837 A.2d 459,

472 (Pa. Super. Ct. 2003).

The basic rule of contract interpretation is to ascertain and give effect to the intent of the contracting parties. Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001). "When the terms of a contract are clear and unambiguous, then intent of the parties is to be ascertained from the document itself." Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d, 462, 481 (Pa. 2006). The issue of whether contractual language is ambiguous is a question of law. Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 561 (Pa. Super. Ct. 2006). In regard to indemnity provisions, "[t]he mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous." Jacobs Constructors, Inc v. NPS Energy Servs., Inc., 264 F.3d 365, 371 (3d Cir. 2001).

As a general matter, contractual terms that are ambiguous are to be construed against the drafter. Meeting House Lane, LTD. v. Melso, 628 A.2d 854, 858 (Pa. 1993). Pursuant to Pennsylvania law, ambiguous writings are interpreted by the fact finder and unambiguous writings are interpreted by the court as a question of law. Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 n.10 (3d Cir. 1994). "A contract will be found ambiguous if, and only if, it is reasonably or fairly susceptible to different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." Metzger v. Clifford Realty Corp., 476 A.2d 1, 5 (Pa. Super. Ct. 1984).

In this case, as discussed below, the Court finds that the contractual language is unambiguous -- Shannon Associates is a contracting party to the Agreement and it has indemnification obligations to the Gyro Parties pursuant to the relevant provisions.

11

B.  **Contracting Party**

The Agreement is clear that Shannon Associates is a contracting party. As an initial matter, the introductory paragraph clearly defines Shannon Associates as the party to the Agreement. Specifically, it states: "This PROFESSIONAL SERVICES AGREEMENT ('Agreement') is made and entered into as of this first day of November, 2007, *by and between Gyro Advertising, Inc.*, 114-120 South 13th Street, Philadelphia, PA 19107 (herein 'Gyro')(as agents for Philadelphia Newspapers, LLC), *and Shannon Associates, (herein the 'Contractor')*." (Third-Party Pls.' Summ. J. Mot., Ex. A at 1 (emphasis added).) In addition, language in Exhibit A to the Agreement has similar language that defines the parties. Exhibit A to the Agreement states: "'Services' and 'Deliverables' referenced below for purposes of the Professional Services and License Agreement ('Agreement') *by and between Gyro Advertising, Inc. ('Gyro') and Shannon Associates (the 'Contractor')* shall mean and include . . . ." (Id. at Ex. A (emphasis added).) Thus, the Agreement and the corresponding exhibit to the Agreement are completely clear that Gyro and Shannon Associates are the contracting parties.

In addition, not only does the introductory paragraph define Shannon Associates as "the Contractor," but the Agreement itself uses the language "*it*" as opposed to "*he*" when referring to "the Contractor." For example, the Agreement states: "The Contractor agrees that *it* shall cause the individuals listed on Exhibit A attached hereto to be made available to perform the obligations of the Contractor under this Agreement relating to the Services." (Id., Ex. A at (emphasis added).) These references to "it" are throughout the Agreement. The use of the "it" language belies Shannon Associates' argument that Angelini is the contracting party. Based on this language, it was obviously the parties' intent to make Shannon Associates, rather than

12

Angelini, the party who owed obligations under the Agreement.

Further, the Agreement refers to the Contractor's employees and any individual contractors (such as Angelini) as "the Contractor's 'Representatives'" for purposes of the Agreement. (Id. at 1.) At her deposition, even Thurm confirmed that Angelini was a "Representative" pursuant to the Agreement. (Id., Ex. C at 67:1-68:4) (Q: "[Y]ou believe this wording of 'representative' refers to just you and not George? A: No. Of course it relates to George. He is creating the image based on their concept that was provided.") This is further evidence that the parties did not intend for Angelini to be a contracting party pursuant to the Agreement. According to the plain words of the Agreement, Shannon Associates is "the Contractor" and Angelini is a "Representative."

Finally, during correspondence with the Gyro Parties prior to the filing of the Third-Party Complaint, Shannon Associates even conceded that it was the contracting party, rather than Angelini. Specifically, in a February 3, 2009 letter to counsel for the Gyro Parties, counsel for Shannon Associates wrote: "As stated in our January 21, 2009 letter, ***Shannon Associates does not have an obligation*** to defend, indemnify or hold harmless the "Gyro defendants" ***until there is a finding Shannon breached its representation and warranty*** its Deliverables would not infringe any intellectual property rights." (Id., Ex. L (emphasis added).) In this letter, there was no mention of Angelini as the contracting party. Evidently, before the third-party litigation commenced, even Shannon Associates believed the parties intended for Gyro and Shannon Associates to be bound under the Agreement.

Shannon Associates' argument that Angelini is the contracting party is primarily based on the fact he signed the Agreement and the signature block contained his individual address. As a

13

threshold matter, "signatures are not dispositive evidence of contractual intent." American Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 584 (3d Cir. 2009). Instead, the intent of the relevant parties controls. Id. In this case, clear language throughout the Agreement manifests an intent to bind Gyro and Shannon Associates.

Significantly, even if Angelini did not have the power to bind Shannon Associates, the company is bound to the Agreement according to the doctrine of agency by estoppel. Pursuant to Pennsylvania law, "agency by estoppel is predicated on two elements: (1) there must be negligence on the part of the principal in failing to correct the belief of the third party concerning the agent and (2) there must be justifiable reliance by the third party." L & M Beverage Co, Inc. v. Anheuser-Busch, Inc., No. 85-6937, 1988 WL 85670, at *15 (E.D. Pa. Aug. 16, 1988) (citing Turnway Corp. v. Soffer, 336 A.2d 871 (Pa. 1975)).

In this case, Shannon Associates' conduct satisfied the first prong of the test. As previously noted, Thurm made a request to Conti that Angelini's name appear on the signature line on the day the Agreement was finalized. Conti testified that he did not inquire as to why Thurm wanted the signature line modified. (Third-Party Pls.' Summ. J. Mot., Ex. B at 43:9-43:19.) Thurm testified that he merely told Conti that this change needed to be made because "[Shannon Associates'] illustrators are the signing party to the contract . . . ." (Id., Ex. C at 106:14-107:14.) It is obvious there was, at most, very little discussion regarding the reasons for the modification.

Thurm did not request that the introductory paragraph or Exhibit A to the Agreement be modified to reflect that Angelini, rather than Shannon Associates, was the contracting party. Further, she did not request that any other contractual language be modified to reflect a change in

14

the contracting party. In addition, Thurm never advised Conti that Angelini was the contracting party or that Angelini did not have authority to bind Shannon Associates. Thus, as Conti testified, he still believed that Shannon Associates was the contracting party and that Angelini was executing the Agreement on Shannon Associates' behalf. (Id., Ex. B at 41:2-3, 75:10-14.)

Shannon Associates also failed to correct the Gyro Parties' alleged misunderstanding when the Gyro Parties put Shannon Associates on notice of the First-Party Litigation. In fact, in the aforementioned February 3, 2009 correspondence, Shannon Associates actually confirmed it was a contracting party and could be bound by the Agreement

As described above, Shannon Associates either intentionally or negligently caused Conti and the Gyro Parties to believe that Shannon Associates was bound by the Agreement. Shannon Associates did not notify the Gyro Parties that Angelini was the alleged contracting party and that he did not have power to bind the company until it filed its Answer to the Third-Party Complaint in April 2009 – seventeen months after the Agreement was finalized and seven months after it was originally informed of the First-Party Litigation.

In addition, the Gyro Parties justifiably relied on the belief that Shannon Associates was the contracting party when the Agreement was finalized. (Id., Ex. B at 41:2-3, 75:10-14.) Gyro did not have the opportunity to consider whether it wanted to contract with only Angelini because it was under the belief that Shannon Associates was the contracting party as a result of the clear language of the Agreement – which was approved by Thurm – and Shannon Associates' conduct. In addition, the Gyro Parties justifiably relied on the belief that Shannon Associates was bound under the Agreement when it sought indemnification and initiated Third-Party Litigation. Shannon Associates never corrected the Gyro Parties' alleged mistaken belief

15

regarding who was bound. To the contrary, it affirmatively confirmed it was a contracting party despite the position it now takes in this litigation. For these reasons, agency by estoppel applies in this case.[2]

### C. Contractual Obligations to Defend and Indemnify

The language of the Agreement is clear and unambiguous. As the contracting party, Shannon Associates is required to indemnify the Gyro Parties for the costs, attorneys' fees, and amount paid to settle the First-Party Litigation.

According to paragraph 8 of the Agreement, Shannon Associates warranted, represented, and covenanted that the Pigs Fly Illustration did not "infringe any intellectual property rights of any person . . . ." (Third-Party Pls.' Summ. J. Mot., Ex. A at 3.) Further, Shannon Associates

---

[2] Based on the conduct described above, Shannon Associates is also bound to the Agreement by the doctrine of ratification. "Ratification has generally been defined as the adoption or confirmation of a prior act performed on the principal's behalf by an agent lacking authority to bind the principal." CNA Ins. Group v. Nationwide Mutual Ins. Co., No. 98-1962, 2000 WL 288241, at *4 (E.D. Pa. Mar. 8, 2000). "When an agent lacks actual authority to agree on behalf of the principal, the principal may still be bound if the principal acquiesces in the agent's conduct, or fails to promptly disavow the unauthorized conduct after acquiring knowledge of the material facts." Id. The subsequent affirmance by a principal of a contract made on its behalf by one who did not at the time have appropriate authority constitutes a ratification, and such ratification relates back and supplies original authority to execute the contract. Id. Significantly, ratification of an agent's acts does not need to be express. Id. at 5. Thus, "'any conduct which indicates assent or its equivalent by the purported principal to become a party to the transaction, or by reason of which the principal has precluded itself from repudiating the transaction done by the purported agent, such as acceptance of benefits, is sufficient." Id. (quotation omitted). As discussed above, Shannon Associates never challenged that it was a party to the Agreement until April 2009 – approximately a year and a half after the Agreement was finalized and seven months after it was first put on notice of the First-Party Litigation. In fact, Shannon Associates' counsel actually confirmed that Shannon Associates was a party to the Agreement in February 3, 2009 correspondence. In addition, Shannon Associates clearly accepted benefits under the Agreement by accepting and cashing the $5,000 check made out to Shannon Associates – even though it gave a portion of these funds to Angelini. In sum, even if Angelini was not authorized to execute the Agreement on Shannon Associates' behalf, Shannon Associates' subsequent conduct ratified the Agreement.

16

represented, warranted, and covenanted that neither the Pigs Fly Illustration nor "any use or exploitation by Gyro of the [Pigs Fly Illustration] [would] infringe any patent, copyright, trademark, trade secret, privacy, publicity, or other intellectual property or proprietary right of any person or entity." (Id. at 4.) Most importantly, paragraph 9 of the Agreement outlines the relevant indemnification provision:

> Contractor ***shall defend, indemnify, and hold harmless*** Gyro and its officers, directors, shareholders, employees, representatives, agents, successors, and assigns from and against any and all losses, obligations, risks, damages, injuries, costs, settlements, liabilities, and expenses (including reasonable attorneys' fees), ***and against any and all claims, actions, suits, and proceedings, arising out of or relating to*** (a) any breach of Contractor's representations or warranties in this Agreement; (b) any breach of this Agreement by Contractor; (c) any fraud, negligence, willful misconduct, or violation of law by Contractor; and (d) any damage to property or injuries to persons, or other acts or omissions caused or contributed to by the Contractor or any of its Representatives, or anyone acting under the Contractor's direction or control or on the Contractor's behalf, in the course of performance under this Agreement.

(Id.)

Even based on a strict construction of the provisions, paragraphs 8 and 9 clearly require Shannon Associates to defend and indemnify the Gyro Parties in this matter. Specifically, the provisions clearly mandate that Shannon Associates will defend and indemnify Gyro, and its officers, against any and all claims arising out of or relating to a breach of Shannon Associates' representations that the Pigs Fly Illustration would not infringe the copyright of another person or entity.

Shannon Associates argues that it is not obligated to defend and indemnify the Gyro Parties unless or until it is proven that Shannon Associates breached a warranty provision. Shannon Associates argues it has no indemnification obligations because a term such as

17

"alleged" or "claimed" does not appear after the phrase "against any and all claims, actions, suits, proceedings, arising out of or relating to" and before the term "breach" in the indemnification provision.

Shannon Associates' argument is without merit. The words "alleged" or "claimed" are not needed before the term "breach" to trigger indemnification obligations in this matter. The term "claim" is defined as "to assert" or "a cause of action." Black's Law Dictionary 247 (6th ed. 1990). The inclusion of the term "claims" earlier in the indemnification provision obviates any need to include the terms "alleged" or "claimed" later in the provision. The omission of those terms is immaterial. Siebe, Inc. v. Louis M. Gerson Co., Inc., 908 N.E. 2d 819, 826 (Mass. App. 2009) (analyzing similar indemnification language and an almost identical argument from an indemnitor and finding that the "indemnification provision covers all 'claims' which, as discussed above, are synonymous with 'allegations'; therefore omission of the term 'alleged' is immaterial and does not vitiate [the indemnitor's] duty to defend").

The indemnification provision covers the "action," "proceedings," and "claims" in the First-Party Litigation because they at least "relate to" breaches of Shannon Associates' representations and warranties. Shannon Associates' interpretation contradicts the language of the Agreement. Moreover, the interpretation is illogical because it would require the Gyro Parties to expend its own resources defending underlying claims and then permit Shannon Associates to escape indemnification obligations if the Gyro Parties were successful or settled the underlying litigation. Clearly, this was not the parties' intent. Based on a reading of the contract and indemnification provision as a whole, the Court concludes that Shannon Associates has indemnification obligations to the Gyro Parties regarding any alleged breaches covered in

paragraph 9 – including any breach of Shannon Associates' representations or warranties.

Notably, the duty to defend is separate and distinct from the duty to indemnify. Jacobs, 274 F.3d at 376. "The duty to defend is broader than the duty to indemnify, since it applies not only to claims that 'are or reasonably appear to be within the scope of the indemnity obligation but also to claims that arguably are or might be found within that scope.'" Bowman v. Am. Homecare Supply, LLC, No. 07-3945, 2008 WL 4787558, at *6 (E.D. Pa. Oct. 30, 2008) (quoting Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 650 (3d Cir. 1990)). "'Generally, the duty to defend is triggered if the underlying complaint avers facts that would support indemnification under the agreement, and the indemnitor must defend until such time as the claim is confined to recovery that the contract does not cover.'" Id. (quoting Mace v. Atl. Ref. Mktg. Corp., 785 A.2d 491, 500 (Pa. 2001)).

Based on the language of paragraph 9 and the above standards, it is evident that Shannon Associates had a duty to defend the Gyro Parties in the First-Party Litigation. Shannon Associates agreed to "defend . . . Gyro and its officers . . . from and against any and all . . . costs, settlements, liabilities, and expenses (including reasonable attorneys' fees), and against any and all claims, actions, suits, and proceedings, arising out of or relating to (a) any breach of [Shannon Associates'] representations or warranties in [the Agreement]." (Third-Party Pls.' Summ. J. Mot., Ex. A at 4.) This provision clearly encompasses the copyright infringement claims brought against the Gyro Parties in the First-Party Litigation. Shannon Associates had a duty to defend the Gyro Parties against the suit and claims because they were "related to" a breach of Shannon Associates' representations that the illustration provided under the Agreement would not infringe the copyright of another person or entity.

19

For the reasons set forth above, the Court finds that summary judgment in favor of the Gyro Parties is appropriate. Accordingly, the Gyro Parties' Motion for Summary Judgment will be granted and Shannon Associates' Motion for Summary Judgment will be denied.[3]

An appropriate Order follows.

3/25/10

---

[3] Shannon Associates appears to cast doubt on the reasonableness of the Gyro Parties' attorneys' fees that were related to the First-Party Litigation. Notably, however, this issue is not presently before the Court. The Court will address this issue when it receives briefing on the reasonableness of the incurred fees.