IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                    :
R. BRADLEY MAULE,                   :   CIVIL ACTION
                                    :
                    Plaintiff,      :
                                    :
        v.                          :   No. 08-3357
                                    :
PHILADELPHIA MEDIA                  :
HOLDINGS, LLC, GYRO                 :
ADVERTISING, INC., and              :
STEVEN GRASSE,                      :
                                    :
                    Defendants.     :
_____ :
                                    :
GYRO ADVERTISING, INC. and          :
STEVEN GRASSE,                      :
                                    :
                    Third-Party Plaintiffs, :
                                    :
        v.                          :
                                    :
SHANNON ASSOCIATES,                 :
                                    :
                    Third-Party Defendant. :
_____ :

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                **OCTOBER 1, 2010**

Presently before the Court is the Petition for Attorneys' Fees and Costs of Third-Party Plaintiffs Gyro Advertising, Inc. ("Gyro") and Steven Grasse ("Grasse") (collectively the "Gyro Parties"). For the following reasons, the Gyro Parties' Petition is granted in part and denied in part.

I.  **BACKGROUND**

   A.  **Introduction**

The claims in this case related to a November 2007 Professional Services and License Agreement (the "Agreement") through which Shannon Associates provided an illustration ("Pigs Fly Illustration") to Philadelphia Media Holdings, LLC ("PMH"), a Gyro client, for an advertising campaign. On July 17, 2008, R. Bradley Maule ("Maule") filed a Complaint in this Court against PMH, Gyro, and Grasse on the basis that the Pigs Fly Illustration infringed upon Maule's federally copyrighted photograph of the Philadelphia skyline (the "First-Party Litigation").

In September 2008, the Gyro Parties first contacted Shannon Associates and demanded that it fulfill its indemnification responsibilities pursuant to the Agreement. Subsequently, on February 23, 2009, after substantial correspondence between the parties, the Gyro Parties filed a Third-Party Complaint against Shannon Associates for failing to fulfill its indemnification obligations (the "Third-Party Litigation"). On June 9, 2009, the First-Party Litigation settled. In accordance with the settlement agreement, the Gyro Parties paid $15,000 to Maule and Shannon Associates paid $10,000 to Maule.

In a March 15, 2010 Memorandum and Order, we disposed of the Cross-Motions for Summary Judgment filed by the Gyro Parties and Shannon Associates.[1] We found that Shannon Associates was a contracting party to the Agreement and that it did have indemnification obligations under the specific indemnification provision in the Agreement. Accordingly, we

---

[1] The Memorandum and Order can be found at Maule v. Philadelphia Media Holdings, LLC, No. 08-3357, 2010 WL 914926 (E.D. Pa. Mar. 15, 2010).

granted the Gyro Parties' Motion and denied Shannon Associates' Motion.

In this Petition, pursuant to the fee-shifting indemnification provision in the Agreement, the Gyro Parties seek reimbursement from Shannon Associates for $250,754.92 of attorneys' fees and costs. This amount relates to: 1) services rendered and costs incurred in the First-Party Litigation; 2) the payment of $15,000 to effectuate the settlement of the First-Party Litigation; 3) services rendered and costs incurred in pursuing the third-party indemnification claim; and 4) services rendered and costs incurred in preparing the instant Petition.

**B.     The Indemnification Provision in the Agreement**

Paragraph Nine of the Agreement contains the following indemnification clause ("Indemnification Provision"):

> Contractor [Shannon Associates] shall defend, indemnify, and hold harmless Gyro and its officers, directors, shareholders, employees, representatives, agents, successors, and assigns from and against any and all losses, obligations, risks, damages, injuries, costs, settlements, liabilities, and expenses (including reasonable attorneys' fees), and against any and all claims, actions, suits, and proceedings, arising out of or relating to (a) any breach of Contractor's representations or warranties in this Agreement; (b) any breach of this Agreement by Contractor; (c) any fraud, negligence, willful misconduct, or violation of law by Contractor; and (d) any damage to property or injuries to persons, or other acts or omissions caused or contributed to by the Contractor or any of its Representatives, or anyone acting under the Contractor's direction or control or on the Contractor's behalf, in the course of performance under this Agreement.

(Third-Party Pls.' Mem. Supp. Pet., Ex. B at 4.)

**C.     Relevant Correspondence**

As previously noted, the First-Party Litigation commenced in July 2008. In September 2008, the Gyro Parties contacted Shannon Associates and demanded that it fulfill its

indemnification responsibilities pursuant to the Agreement. (Third-Party Pls.' Summ. J. Mot., Ex. I.) Subsequently, on November 6, 2008, the Gyro Parties sent a letter to Shannon Associates "requesting that Shannon Associates abide by its contractual indemnification obligations enumerated in paragraph 9 of the Agreement." (Id.) In this letter, the Gyro Parties requested that Shannon Associates advise by November 14, 2008 as to its position regarding its indemnification obligations to the Gyro Parties. (Id.)

Shannon Associates did not respond to the November 6, 2008 letter until January 21, 2009. In a January 21, 2009 letter to Gyro, Shannon Associates stated: "[B]ecause there has been no 'breach,' Shannon Associates has no obligations to [the Gyro Parties] at this time based on paragraphs 8 and 9 of the Agreement. Nonetheless, from this point going forward, Shannon Associates will agree to defend and indemnify [the Gyro Parties] relevant to the above-referenced matter." (Id., Ex. J.)

In a January 30, 2009 letter, in response, the Gyro Parties provided a detailed explanation of their position that pursuant to the language in the Agreement "Shannon Associates is contractually required to defend, indemnify, and hold the Gyro Defendants harmless from the allegations of infringement asserted against them in the [First-Party Litigation]" of which Shannon Associates was made aware in September 2008. (Id., Ex. K.) In this letter, the Gyro Parties demanded that Shannon Associates pay all of the Gyro Parties' attorneys' fees and costs from the commencement of the First-Party Litigation. Also, on January 30, 2009, the Court partially granted the Gyro Parties' Motion to Dismiss. Thus, Counts IV, IX, and X of the Amended Complaint were dismissed.

Subsequently, through a February 3, 2009 letter, Shannon Associates reasserted its

position: "Shannon Associates does not have an obligation to defend, indemnify or hold harmless the 'Gyro defendants' until there is a finding Shannon breached its representation and warranty [that] its Deliverables would not infringe any intellectual property rights." (Id., Ex. L.) The company restated its position that it would agree to defend and indemnify the Gyro Parties from that point forward.

The Gyro Parties rejected Shannon Associates' offer to merely defend the First-Party Litigation in the future because they believed the case was close to a settlement. On February 13, 2009, the Gyro Parties informed Shannon Associates that they would file a third-party complaint if Shannon Associates did not abide by its contractual obligations to pay all fees and costs associated with the First-Party Litigation by February 20, 2009. Shannon Associates did not respond by February 20, 2009. On February 23, 2009, the Gyro Parties filed their Third-Party Complaint in this Court against Shannon Associates.

Thereafter, in a March 5, 2009 letter, the Gyro Parties requested that Shannon Associates participate in settlement negotiations involving the First-Party Litigation, and also explained why transferring the defense of the First-Party Litigation to Shannon Associates' counsel would be counter-productive and costly because of the likelihood of imminent settlement. The Gyro Parties informed Shannon Associates that they would revisit the transfer issue if the First-Party Litigation failed to settle.

### D. Relevant Procedural History

In the March 15, 2010 Memorandum and Order, we granted the Gyro Parties' Motion for Summary Judgment and denied Shannon Associates' Motion. Pursuant to this Court's Order, the Gyro Parties filed the instant Petition on April 14, 2010. The Gyro Parties' Petition attaches

detailed time sheets and other billing information to support its claim for attorneys' fees and costs. On April 28, 2010, Shannon Associates filed their Response in Opposition to the Petition. Subsequently, the parties have filed several supplemental briefs that address the reasonableness of the attorneys' fees and various legal issues. On two separate occasions, the Court specifically requested that Shannon Associates provide particularized objections to the reasonableness of the attorneys' fees and costs.

## II. STANDARD OF REVIEW/APPLICABLE LAW

Pennsylvania law applies in this case pursuant to the choice of law provision in paragraph 12 of the Agreement (Third-Party Pls.' Mem. Supp. Pet., Ex. B at 4) ("The terms and conditions of this Agreement and all aspects of [Shannon Associates'] relationship with Gyro shall be construed and enforced according to the laws of the Commonwealth of Pennsylvania, without regard to Pennsylvania conflicts of laws principles.")

The determination of the reasonable amount of counsel fees begins with a calculation of the lodestar amount which is equivalent to the appropriate hourly rate multiplied by the reasonable amount of hours expended. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As Pennsylvania courts have noted: "The calculation of a reasonable fee should begin with the actual number of hours spent in pursuing the claim multiplied by a reasonable rate. Both the number of hours and the rate per hour shall be calculated on a basis reasonably reflective of the relevant market and the magnitude, complexity and uniqueness of the claim and the related task[s]." Birth Ctr. v. St. Paul Cos., 727 A.2d 1144, 1160-61 (Pa. Super. Ct. 1999).

The determination of what constitutes reasonable attorneys' fees is at the discretion of the court. Freeze v. Donegal Mut. Ins. Co., 603 A.2d 595, 602 (Pa. Super Ct. 1992). Specifically,

the court has the discretion to adjust the lodestar figure. Signora v. Liberty Travel, Inc., 886 A.2d 284, 293 (Pa. Super. Ct. 2005). This analysis "is a fact-intensive inquiry, requiring competent evidence." Photomedex, Inc. v. St. Paul Fire & Marine Ins. Co., No. 07-25, 2008 WL 324025, at *19 (E.D. Pa. Feb. 6, 2008). "In determining whether counsel fees are reasonable, the court should consider several factors: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the professional skill and experience called for, and the standing of the attorney in his or her profession; the result he or she was able to obtain; and the pecuniary benefit derived." Post v. St. Paul Travelers Ins. Co., No. 06-4587, 2010 WL 2490750, at *12 (E.D. Pa. June 15, 2010) (citing Freeze, 603 A.2d at 602).

Significantly, although "it is not the function of the court to second-guess counsel's strategy, it is important that the hours claimed by counsel be reviewed to determine that the time actually spent was reasonably necessary and appropriate." Danks v. Gov't Emps. Ins. Co., 453 A.2d 655, 656 (Pa. Super. Ct. 1982). In awarding attorneys' fees, Pennsylvania courts have found "that reimbursement must be for time appropriately spent by counsel on the particular case." Id.

## III. DISCUSSION

Shannon Associates makes various legal and reasonableness objections to the amount of attorneys' fees and costs requested by the Gyro Parties. The Court will now address these arguments.

### A. Fees and Costs Incurred in the Pursuit of Indemnification

Throughout its various briefs, Shannon Associates contends that the Gyro Parties are not

entitled to fees incurred during the Third-Party Litigation. Shannon Associates primarily argues that the "American rule" applies and that the "[I]ndemnification Provision only applies to first-party actions brought against Gyro arising out of Shannon Associates' negligence or breach of contract." (Third-Party Defs.' Mem. Opp. Pet. at 5.) Shannon Associates claims that "[n]owhere in the Agreement does it entitle Gyro to recover counsel fees incurred in the prosecution of actions for breach of contract against Shannon Associates." (Id.)

The Pennsylvania Supreme Court recently described the "American rule": "[T]he general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct . . . . This so-called 'American Rule' holds true 'unless there is express statutory authorization, ***a clear agreement of the parties***, or some other established exception.'" McMullen v. Kutz, 985 A.2d 769, 775 (Pa. 2009) (citations omitted) (emphasis added). In the instant case, the Gyro Parties argue that, pursuant to the plain language of the Indemnification Provision, "Shannon Associates is . . . contractually obligated to indemnify the Gyro Parties for the fees and costs associated with the Third-Party Litigation – a claim arising out of, and certainly related to, Shannon Associates' breach of contract." (Third-Party Pls.' Resp. Second Supp. Mem. Opp. Pet. at 3.)[2]

---

[2] Shannon Associates cites Fleck v. KDI Sylvan Pools, Inc. for a general discussion of common law indemnification and the proposition that "an indemnitee may recover attorneys' fees and costs incurred in the defense of an indemnitor." 981 F.2d 107, 117 (3d Cir. 1992); (Third-Party Defs.' Second Supp. Memo. Opp. Pet. at 2.) Shannon Associates concedes in its original opposition brief that a prevailing litigant can recover attorneys' fees from the opposing party when there is an applicable agreement that provides for the award of attorneys' fees. (Third-Party Defs.' Mem. Opp. Pet. at 4 (citing Pennsylvania v. Flaherty, 40 F.3d 57, 60 (3d Cir. 1994), for the proposition that a "plaintiff cannot recover attorneys' fees from the opposing party unless there is a statute or agreement between the parties that provides for the awarding of attorneys' fees").)

Indemnity clauses in agreements should be interpreted in accordance with the general rules governing contract law. Kerrigan v. Villei, 22 F. Supp. 2d 419, 426 (E.D. Pa. 1998). The basic rule of contract interpretation is to ascertain and give effect to the intent of the contracting parties. Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429 (Pa. 2001). "When the terms of a contract are clear and unambiguous, then intent of the parties is to be ascertained from the document itself." Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 481 (Pa. 2006). The issue of whether contractual language is ambiguous is a question of law. Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 561 (Pa. Super. Ct. 2006). In regard to indemnity provisions, "[t]he mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous." Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 371 (3d Cir. 2001).

Here, the parties included an Indemnification Provision that allows the Gyro Parties to recover the attorneys' fees and costs expended during the Third-Party Litigation. Specifically, Shannon Associates agreed to indemnify the Gyro Parties "from and against any and all losses, obligations, risks, damages, injuries, costs, settlements, liabilities, and expenses (including reasonable attorneys' fees), and against any and all claims, actions, suits, and proceedings arising out of or relating to . . . (b) any breach of this Agreement by [Shannon Associates]." (Third Party Pls.' Mem. Supp. Pet., Ex. B at 4.) We found in the March 15, 2010 Memorandum and Order that Shannon Associates breached the Agreement by refusing to indemnify the Gyro Parties. The Gyro Parties' breach of contract claim in the Third-Party Litigation, and resultant attorneys' fees and costs, certainly arise out of or relate to Shannon Associates' breach of the Agreement.

The Court has not located, and the parties have not cited, any case law that addresses this

9

issue in the context of the specific contractual language before this Court. Nevertheless, the Court finds the Delaware Supreme Court's analysis of similar contractual language persuasive. Pike Creek Chiropractic Ctr. v. Robinson, 637 A.2d 418, 422-23 (Del. 1994) ("Because [the indemnitee] is contractually entitled to be held harmless, we likewise conclude it is entitled to its attorneys' fees incurred in enforcing the Indemnification Clause. The Indemnification Clause is very broad in scope and requires [the indemnitor] to hold harmless and indemnify [the indemnitee] against any liabilities and expenses, including attorney's fees, resulting from [the indemnitor's] acts or omissions."). The Pike Creek court found: "We hold that where indemnification is required and the indemnitor has been given proper notice of the pending litigation and an adequate opportunity to undertake its duty to defend, the indemnitee is entitled to recover its costs and attorneys' fees for the expenses incurred . . . in enforcing its right to indemnification." Id. at 423. As the court explained:

> The hold harmless clause required that the [indemnitor] shall save harmless the [indemnitee] from all suits, actions, or claims of any character brought on account of injuries or damages sustained by any person. The [indemnitee] is not held harmless if it must incur costs and attorney's fees in bringing suit to recover on the indemnity clause. ***The [indemnitor] on the other hand can avoid such costs and attorney's fees by paying the amount due without the necessity of suit***.

Id. at 422 (emphasis added).

Similarly, the Indemnification Provision in this case is very broad and covers the attorneys' fees and costs related to the Third-Party Litigation. As the Pike Creek court recognized, as the indemnitor, Shannon Associates could have avoided these fees and costs if it simply would have fulfilled its clear indemnification obligations related to the First-Party Litigation. Instead, Shannon Associates elected to ignore the Gyro Parties for more than two

10

months after the Gyro Parties made the first written request for indemnification on November 6, 2008. Moreover, Shannon Associates ultimately refused to completely fulfill its obligations when it finally did respond to the Gyro Parties' written request. In sum, Shannon Associates caused the Third-Party Litigation. Pursuant to the unambiguous language of the Indemnification Provision, it must now pay for the reasonable attorneys' fees and costs associated with the suit.[3]

### B. Mitigation of Damages

Shannon Associates also argues that the Gyro Parties failed to mitigate damages by not accepting Shannon Associates' offer to undertake the defense of the First-Party Litigation on

---

[3] Shannon Associates also half-heartedly argues that the Gyro Parties failed to adequately identify the fees and costs associated with the Third-Party Litigation in the prayer for relief section of the Third-Party Complaint. In fact, Shannon Associates claims that "[u]ntil Gyro filed its fee application [it] had no notice Gyro was also seeking recovery of fees incurred in the suit to enforce the indemnification provision." (Third-Party Defs.' Third Supp. Memo. Opp. Pet. at 4.) This is certainly not accurate as the Gyro Parties' Motion for Summary Judgment clearly stated they were seeking "the attorneys' fees, costs, and settlement monies paid to Maule in settlement of the First-Party Claims ***and the attorneys' fees and costs incurred by the Gyro Parties to pursue the third-party claims against Shannon Associates in this Court***." (Third-Party Pls.' Mem. Supp. Summ. J. at 4-5 (emphasis added).) Shannon Associates' claim is without merit. The prayer for relief states: "Wherefore, third-party plaintiffs, Gyro Advertising, Inc., and Steven Grasse demand judgment against third-party defendant Shannon Associates including attorneys' fees and costs expended in the underlying litigation together with delay damages, interest and such other damages as provided for or available under Pennsylvania law." (Third-Party Compl. at 5.) First, we find that this prayer for relief is broad enough to cover the fees and costs at issue because it includes the clause "such other damages as provided for or available under Pennsylvania law." (Id.) As discussed above, the attorneys' fees and costs are available under Pennsylvania contractual law. Second, as courts in this district have stated, "the court may award whatever relief is proper under the facts of the case and is not limited by the prayer for relief or the language of the complaint." Interdigital Tech. Corp. v. Oki Amer., Inc., 845 F. Supp. 276, 282 (E.D. Pa. 1994) (citing 3 James Wm. Moore et al., Moore's Federal Practice ¶¶ 8-14 (2d ed.1993)). The award of attorneys' fees and costs associated with the Third-Party Litigation is appropriate relief under the facts of this case. Third, pursuant to Federal Rule of Civil Procedure 54(d), a prevailing party may seek reimbursement of costs and fees by motion within 14 days after the entry of judgment unless a court order provides otherwise. Fed. R. Civ. P. 54(d). The Gyro Parties petitioned for the attorneys' fees and costs within the thirty-day time period outlined in the March 15, 2010 Order.

January 21, 2009. Thus, Shannon Associates claims that the Gyro Parties are not entitled to fees after this date.

As the Third Circuit has stated: "The concept that the party injured by a breach of contract is under a duty to mitigate his damages has been an established part of contract law for many years. The principle has been recognized in the Restatement of Contracts and by the Pennsylvania courts." Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat'l Bank, 611 F.2d 465, 471 (3d Cir. 1979). Further, "[t]he term 'duty to mitigate' damages has been interpreted to mean [those] 'damages which the plaintiff might have avoided with reasonable effort without undue risk, expense, or humiliation . . . . When mitigation is appropriate, the test to be applied to the plaintiff's conduct is whether the conduct taken in response to the defendant's breach was reasonable.'" Id. (citation omitted).

Here, Shannon Associates' mitigation argument is completely meritless. In the January 21, 2009 correspondence, Shannon Associates made it clear that they would not agree to fully indemnify the Gyro Parties as it was required to under the Agreement. Thus, the Gyro Parties' current counsel was required to remain involved in the case in order to pursue the Third-Party Litigation. Further, because of the fact that Shannon Associates had refused to fulfill any of its indemnification obligations until January 21, 2009 and settlement of the First-Party Litigation appeared imminent, the Gyro Parties' current counsel needed to remain in the case to avoid any undue risk or expense associated with transferring representation of the case at that time. Accordingly, the Gyro Parties are entitled to recovery of the fees and costs after January 21,

2009.[4]

## C. Fees and Costs Associated with the Motion to Open Default and Motion for Sanctions

In addition, Shannon Associates contends that the Gyro Parties are not entitled to the fees related to the Motion to Open Default or Motion for Sanctions against Maule that the Gyro Parties filed during the First-Party Litigation. Specifically, Shannon Associates argues that these Motions and the related fees could have been avoided.

The Court will not rehash the detailed factual circumstances surrounding these Motions. Significantly, however, these Motions were merely part of the normal course of litigation. The Motions were certainly not baseless and were not the result of any unreasonable or careless conduct on the part of the Gyro Parties' counsel. Thus, Shannon Associates is responsible for the fees and costs related to these Motions.

## D. Fees and Costs Incurred Prior to November 6, 2008

Further, Shannon Associates claims that the Gyro Parties are not entitled to any fees prior to November 6, 2008 – the date which the Gyro Parties made the first written request for Shannon Associates to fulfill its indemnification responsibilities. However, there is

---

[4] Shannon Associates' good faith/fair dealing and waiver arguments similarly fail. There is no evidence that the Gyro Parties breached their duty of good faith or waived their entitlement to expenses after January 21, 2009 through their express declarations or conduct. Samuel J. Marranca Gen. Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship, 610 A.2d 499, 501 (Pa. Super. Ct. 1992) ("Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary.")

uncontroverted evidence in this case that the Gyro Parties approached Shannon Associates regarding the indemnification obligations as early as September 2008. (Third-Party Pls.' Summ. J. Mot., Ex. I.) Thus, this argument lacks merit. The Gyro Parties contacted Shannon Associates within a reasonable time after the First-Party Litigation commenced and placed it on notice of its contractual obligations. They will not be penalized for attempting to amicably resolve the indemnification issues prior to sending a formal letter. Notably, Shannon Associates has not identified any notice provision in the Agreement that the Gyro Parties failed to follow. Accordingly, Shannon Associates is responsible for the Gyro Parties' attorneys' fees and costs prior to November 6, 2008.

### E. Reasonableness Objections

As previously mentioned, the Court provided Shannon Associates with multiple opportunities to provide particularized objections to the reasonableness of the amount of fees and costs requested by the Gyro Parties. While the Court understands its duty to take an active role during this reasonableness review process, it provided Shannon Associates with these opportunities because Shannon Associates is very familiar with the nature of the litigation costs and fees which the parties encountered during the pleadings stage, motion practice, and discovery – especially in regard to the Third-Party Litigation. The Court will deduct a portion of the fees and costs requested by the Gyro Parties in accordance with the objections raised by Shannon Associates.

#### 1. Attorneys' Fees

Interestingly, despite taking issue with the amount of attorneys' fees that the Gyro Parties seek for an underlying lawsuit that settled for $25,000, Shannon Associates' reasonableness

objections to attorneys' fees – based on the Gyro Parties' counsel's time sheets and other billing information – only amount to $34,881 in requested deductions. Shannon Associates clarified in its briefing that it does not object to the hourly rates charged by the Gyro Parties' attorneys. (Third-Party Defs.' Second Supp. Memo. Opp. Pet. at 3.) Thus, Shannon Associates' objections exclusively address hours spent on certain activities.

After a review of the detailed billing information, the Court finds that Shannon Associates' objections to specific time entries, based on grounds such as excessive and duplicative work, have merit in light of the nature of the First-Party and Third-Party Litigation. The Court will not deduct any additional attorneys' fees outside of a deduction for fees associated with the Petition. Thus, $34,881 will be deducted from the Gyro Parties' request of $220,906.42 in fees and costs.[5] The following charts summarize the unreasonable fees that will be deducted.

**REASONABLENESS DEDUCTIONS RELATED TO FIRST-PARTY LITIGATION**

| Attorney/Paralegal | Flat Fee for Case | Total Hours Reduction | Total Fee Reduction |
| --- | --- | --- | --- |
| Justin B. Wineburgh (Partner) | $350 | 9.4 hrs | $3,290.00 |
| Melanie A. Miller (Partner) | $350 | 24.7 hrs | $8,645.00 |

---

[5] Based on the detailed billing information provided, Shannon Associates submits that the total attorneys' fees incurred were $223,407.75 and the total costs incurred were $9,583.42 – not including the fees and costs associated with the preparation of the instant Petition. (Third-Party Defs.' Mem. Opp. Pet. at 3 n.1, 14.) The Gyro Parties do not dispute these calculations. Nevertheless, the Gyro Parties only request $220,906.42 in fees and costs – not including the fees and costs related to the Petition. Thus, the Court will use this lower figure for purposes of this Petition and any relevant deductions.

| Phillip G. Kircher (Partner) | $350 | NONE | NONE |
| Aaron P. Georghiades (Associate) | $285 | 19.1 hrs | $5,443.50 |
| Jennie A. Taylor (Associate) | $285 | 3.3 hrs | $940.50 |
| Catherine B. Branka (Paralegal) | $195 | 13.6 hrs | $2,652.00 |

**TOTAL REASONABLENESS DEDUCTION = *$20,971***

**REASONABLENESS DEDUCTIONS RELATED TO THIRD-PARTY LITIGATION**

| Attorney/Paralegal | Flat Fee for Case | Total Hours Reduction | Total Fee Reduction |
|---|---|---|---|
| Justin B. Wineburgh (Partner) | $350 | 5.0 hrs | $1,750 |
| Melanie A. Miller (Partner) | $350 | 8.9 hrs | $3,115.00 |
| Phillip G. Kircher (Partner) | $350 | NONE | NONE |
| Aaron P. Georghiades (Associate) | $285 | 0.8 hrs | $228.00 |
| Jennie A. Taylor (Associate) | $285 | 11.3 hrs | $3,220.50 |
| Catherine B. Branka (Paralegal) | $195 | 28.7 hrs | $5,596.50 |

**TOTAL REASONABLENESS DEDUCTION = *$13,910***

**OVERALL DEDUCTION** = *$34,881*

    **2.    Costs**

Unlike with attorneys' fees, Shannon Associates has provided no legitimate reasons to

reduce the Gyro Parties' claimed costs on reasonableness grounds. Notably, Shannon Associates' arguments regarding costs associated with legal research are speculative and unconvincing. Based on a review of the requested costs and the supporting documentation, we find no reason to reduce the amount of requested costs. Thus, Shannon Associates is responsible for the entire amount of costs incurred during both the First-Party and Third-Party Litigation.

### 3. Fees and Costs Incurred in Drafting Petition

Hours spent on a fee petition are compensable. Cerva v. E.B.R. Enters., Inc., 740 F. Supp. 1099, 1108 (E.D. Pa. 1990). However, "[t]ime spent on the fee petition is to be analyzed separately from the time spent on the main part of the litigation." Id. Importantly, "[t]hese hours . . . may be reduced when the petition is only partially successful." Id. In fact, as the Third Circuit has clarified, "it has been held to be an abuse of discretion not to reduce the hours spent on the fee petition if it is not totally successful." Id.

Here, the Gyro Parties seek $14,848.50 in fees and costs related to drafting the outstanding Petition. The billing information indicates that the Gyro Parties' counsel spent 47.5 hours on this filing. The Court finds that the $14,848.50 figure should be reduced because the Petition was only partially successful. The Gyro Parties request $220,906.42 in fees and costs. The Court will award $186,025.42 in fees and costs – 84% of the amount requested. Thus, the Court will award $12,472.74 in fees and costs associated with the Petition – 84% of the $14,848.50 requested.

For the reasons set forth above, the Court finds that the Gyro Parties' Petition will be partially granted. Pursuant to the Indemnification Provision in the Agreement, Shannon Associates will be ordered to reimburse the Gyro Parties the following amounts: 1) $186,025.42

in attorneys' fees and costs related to the First-Party and Third-Party Litigation; 2) $12,472.74 in fees and costs incurred in regard to the instant Petition; and 3) $15,000 paid to effectuate the settlement of the First-Party Litigation. Shannon Associates will be ordered to pay this total of $213,498.16 within thirty (30) days of this Court's Order.

      An appropriate Order follows.